IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

THOMAS WAYLON BOYD                                                    PLAINTIFF

v.                                    Civil No. 4:19-cv-4077

JUDGE DUNCAN CULPEPPER; PHILLIP
HARRIS, Prosecuting Attorney; DANNY ROGERS,
Public Defender; TIM MCBRAYER, Officer;
SEAN CLARK, Officer; JUSTIN HURST,
Attorney; JAMES SINGLETON, Sheriff;
JUDGE RANDAL WRIGHT; KOLBY HARPER,
Prosecuting Attorney; MATTHEW FORD,
Prosecuting Attorney; JOE T. TYLER, Public
Defender; BO MORRIS, Officer/Deputy; OFFICER
BROWN, Officer/Deputy; SGT. HUGHES, Officer/
Deputy; EVANS, Parole; DEPUTY SIMMONS, Parole;
PROSECUTOR TRACI GRAHAM, Prosecuting
Attorney; and BILLY MORITZ, Attorney                                  DEFENDANTS

## ORDER

This is a civil rights action filed by Plaintiff Thomas Waylon Boyd pursuant to 42 U.S.C.

§ 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. The case is currently before the Court

for preservice screening under the provisions of the Prison Litigation Reform Act ("PLRA"),

which provides that the Court must screen any complaint in which a prisoner seeks redress from a

governmental entity, officer, or employee. 28 U.S.C. § 1915A.

## I. BACKGROUND

Plaintiff, currently an inmate in the Bowie County Correctional Center in Texarkana,

Texas, filed this action in the Eastern District of Arkansas on July 1, 2019. (ECF No. 2). The case

was transferred to the Western District of Arkansas, Texarkana Division, on July 9, 2019. (ECF

No. 5). Although Plaintiff did not specifically state under what federal statute he was seeking

relief, the Court interpreted his Complaint as an attempt to file a civil rights action under 42 U.S.C. § 1983.

In his Complaint, Plaintiff named the following individuals as Defendants: Judge Duncan Culpepper, Prosecuting Attorney Phillip Harris, Public Defender Danny Rogers, Officer Tim McBrayer, Officer Sean Clark, Attorney Justin Hurst, Sheriff Singleton, Judge Randal Wright, Prosecuting Attorney Kolby Harper, Prosecuting Attorney Matthew Ford, Public Defender Joe T. Tyler, Officer/Deputy Bo Morris, Officer/Deputy Brown, Officer/Deputy Sergeant Hughes, Evans "Parole," Deputy Simmons "Parole," Prosecutor Traci Graham, and Attorney Billy Moritz. (ECF No. 2).[1]

Plaintiff's Complaint was not submitted on the section 1983 form approved for the Western District of Arkansas and many of his claims appeared to be frivolous or were asserted against individuals who are immune from suit. Consequently, the Court directed Plaintiff to file an amended complaint. (ECF No. 9). On July 25, 2019, Plaintiff filed his First Amended Complaint. (ECF No. 10). However, Plaintiff did not use the Court-approved section 1983 form provided to him. Rather, Plaintiff's First Amended Complaint was a confusing, eighty-four-page handwritten narrative that did not clearly identify the named Defendants or Plaintiff's claims against them.[2]

The Court then ordered Plaintiff to submit a second amended complaint on or before August 19, 2019. (ECF No. 11). This order specifically directed Plaintiff to submit no more than a total of twenty pages identifying the named Defendants and stating his claims against them. On August 23, 2019, Plaintiff submitted a Second Amended Complaint consisting of fifty-eight pages. (ECF No. 12). Because Plaintiff failed to comply with this Court's order to submit a total of twenty

---

[1] Plaintiff's Complaint consisted of one hundred twenty-five handwritten pages.

[2] Thus, the Court did not add new Defendants or terminate any named Defendants based on Plaintiff's First Amended Complaint.

pages to state his claims, the Court struck Plaintiff's Second Amended Complaint. (ECF No. 13). However, the Court gave Plaintiff another opportunity to submit a Second Amended Complaint that complied with the Court's orders.

To that end, Plaintiff was again directed to submit a second amended complaint on the Court's approved section 1983 form, limited to twenty pages. (ECF No. 13). Plaintiff was also given the following directives: (1) fill out the entire form referring only to Case No. 4:19-cv-04077 in the case caption and do not attempt to file additional lawsuits in this case; (2) identify each named Defendant, indicating his or her name, position, relationship to Plaintiff, place of employment and address on consecutive pages; (3) write short, plain statements telling the Court the constitutional right Plaintiff believes was violated by each named Defendant, exactly what the Defendant did or failed to do, how the action or inaction of that Defendant is connected to the violation of Plaintiff's constitutional rights and what specific injury Plaintiff suffered because of that individual Defendant's conduct; (4) do not include any motions with the Second Amended Complaint; and (5) do not include a request for *habeas* relief. (*Id.* at pp. 2-4). The Court also informed Plaintiff that this case would be subject to dismissal if he failed to submit a Second Amended Complaint which complied with those instructions. (*Id.* at p. 4).

Plaintiff filed his Second Amended Complaint on September 11, 2019. (ECF No. 14). Plaintiff's thirty-four-page Second Amended Complaint is difficult to decipher because he attempts to assert unrelated claims arising over a period of eleven years against twenty-one defendants who were involved in some fashion with his various criminal charges, convictions, and parole. The pleading specifically identifies the following individuals as Defendants as ordered: (1) Justin Hurst, Plaintiff's private defense attorney; (2) Billy Morritz, Plaintiff's private defense

attorney;[3] (3) Joe T. Tyler, Plaintiff's public defender; and (4) Danny Rogers, Plaintiff's public defender.[4] (ECF No 14).

In Claim One, Plaintiff alleges that Defendants Hurst, Morritz, and Tyler were "deputies of the Court and/or Attorney's and/or under color of law failed to establish reasonable liability or to investigate legal obligation in light of Due process. . . . [I] have suffered the unlawful actions of false arrest, use of force . . . prosecution . . . without remedy . . . due process." (ECF No. 14, p. 4). In Claim Two, Plaintiff asserts that Defendants Hurst, Morritz, and Tyler were negligent and ineffective as his counsel during his criminal proceedings. (*Id.* at p. 5). In Claim Three, Plaintiff alleges Defendants Hurst, Morritz, and Tyler are responsible for his "unlawful detention, wrongful institution of legal process & malicious prosecution and a wrongful use of judicial process or negligence of due process." (*Id.* at p. 6). Plaintiff does not specifically name Defendant Rogers in any of these claims. Plaintiff seeks compensatory and punitive damages and asks he be awarded "custody/visitation . . . of my children, should be granted an unmarked car, gov. phone, and a loan of $3000.00 a month until case is ended. I should be acquitted of any and all offenses, completely exonerated . . . releasing me on own recognizance, retainment of counsel . . . because I am the victim." (*Id.* at p. 7).

In the narrative portion of his Second Amended Complaint, Plaintiff also mentions the following individuals who were initially named as Defendants in his first Complaint, but does not provide any information regarding their current addresses or places of employment: Judge Duncan Culpepper, Phillip Harris, Tim McBrayer, Sean Clark, Sheriff James Singleton, Judge Randal

---

[3] Mr. Morritz is identified in the case caption as "Moritz".

[4] On page 3 of the Second Amended Complaint, Plaintiff lists Mr. Rogers as a Defendant but does not list his position, place of employment, or address. Later in the pleading, on page 26, Plaintiff mentions that Mr. Rogers is now deceased.

Wright, Matthew Ford, Bo Morris, Officer Brown, Sergeant Hughes, Evans, Simmons, and Traci Graham. Plaintiff also seeks to add the following individuals as new Defendants: Bubba Shewbirt, Catherine E. Lee, and Magistrate Judge Barry A. Bryant. For efficiency's sake, the Court will separately recount the allegations Plaintiff makes as to each of these Defendants.

Plaintiff claims Defendant Judge Duncan Culpepper presided over "the proceedings of conviction and sentence" in Nevada County, Arkansas in 2010, in which the "prosecution was not asserted by diligent means after a third party confessed and indicated he acted alone. . . . [I] was only given two choices by the judge to plea." (ECF No. 14, p. 8). Plaintiff also references sentences imposed against him in 2009 and 2015 and claims these sentences were invalid or incorrect. (*Id.* at pp. 8-9).

Plaintiff states Defendant Phillip Harris "was the prosecuting attorney in 2010 [and] entered a prosecution against me in the [state court] . . . without diligent prosecution. . . . [I]n 2012 he entered a prosecution against me in [state court] . . . without diligent prosecution." (*Id.*).

Plaintiff states Defendant Danny Rogers was his public defender in 2010 and "did not protect my inviolate criminal status, record and citizenship . . . negligently allowed prosecution and conviction to occur." (*Id.*).

Plaintiff claims Defendant Tim McBrayer was an officer who, in 2009, "unlawfully arrested me, by not showing warrant when requested and then assaulted and imprisoned me against my will by cuffs, transportation and jail. . . . [I]n 2014 he unlawfully arrested me . . . did not provide warrant when requested." Plaintiff goes on to claim Defendant McBrayer pepper sprayed him in 2014 and then arrested him again in 2015 and threatened him with pepper spray. (ECF No. 14, p. 10).

Plaintiff alleges that, in 2009, Defendant Sean Clark "[came] to my residence without civil notice . . . and harassed me and my guest" during an arrest. (*Id.*).

Plaintiff claims that, in 2012, Defendant James Singleton "arrived on the scene where his fellow officers had harassed me while holding my son" and then directed officers to strike Plaintiff and utilize a taser on him. Plaintiff states Defendant Singleton "caused this tasing act and his fellow deputy placed me into a choke hold." Plaintiff claims his son was also injured during this incident. (ECF No. 14, p. 11).

Plaintiff claims Defendant Judge Randal Wright presided over his criminal proceedings in 2012. Plaintiff alleges Defendant Wright ignored his request to have the case dropped and "deprived me of my privileges to family and home . . . by ordering no contact order." (ECF No. 14, p. 12). Plaintiff goes on to claim that, in 2018, "[Defendant Wright] wanted the case over with [and] said he would drop the battery charge if I plead to the fleeing charge. He then gave me a choice to plea. I did not sign the plea/waiver and was convicted and sentenced without sufficient evidence." (*Id.*).

Plaintiff states Defendant Matthew Ford was a prosecuting attorney who "was present when I requested dismissal 2 times. He participated in the discovery process and imposed a sentence . . . made allegations . . . that do not appear by material fact and prosecuted claims without diligent prosecution . . . I was convicted and sentenced . . . did not prove any offense had occurred." (ECF No. 14, p. 13).

Plaintiff claims that, in 2018, Defendant Bo Morris walked up to him "with his gun in his hand pointing said gun hollering roll over . . . holstered his gun and followed Defendant Officer Brown." (ECF No. 14, pp. 13-14). Plaintiff says Defendant Morris did not produce any warrant and "handcuffed me to a fence walked away and threatened to charge me with resisting . . . he left

me cuffed to the fence for about 30 mins . . . he provided me with a bottle of water to drink." (*Id.* at p. 14). Plaintiff goes on to state Defendant Morris "did not shake my hand in court, he left the courtroom before conviction & sentence. He did not state claims concisely did not establish jurisdiction . . . stated false claims . . . did not call ambulance to the scene." (*Id.*).

Plaintiff claims that, in 2018, Defendant Brown "grabbed me and pulled me to my feet . . . did not introduce nor advise arrest. He witnessed me being . . . cuffed to fence . . . he trespassed property and did not prevent unlawful arrest and false imprisonment." (ECF No. 14, pp. 14-15). Plaintiff also claims that, in June 2017, Defendant Brown "verified me to be out of state for a job pass but when a new officer was assigned to me and he left the parole office a warrant was placed for my arrest and I was arrested in Louisiana. I was fired from my job." (*Id.* at p. 15).

Plaintiff states Defendant Hughes "trespassed property. He approached me with his gun drawn . . . witnessed Officer Bo Morris make his false allegation and handcuff me to a fence." (ECF No. 14, p. 15). "Because of this [failure to] prevent his fellow official from mistake I have been convicted sentenced and incarcerated." (*Id.*).

Plaintiff claims Defendant Evans "witnessed me handcuffed to a fence and me being transported. She did not provide warrant and did not enforce arrest pursuant to warrant. Because of this I was charged outside of warrant and prosecuted twice for the same events. . . . She did not assure the protection of my person nor of my freedom. And did not prevent prosecution." (*Id.*).

Plaintiff claims Defendant Simmons caused multiple warrants to issue for Plaintiff's arrest "by construing and advising me of different times to appear at parole [appointment] rather than had been scheduled, did not provide documentation for [parole revocation] . . . did not prevent arrest or false arrest . . . did not prevent prosecution." (ECF No. 14, p. 15). Plaintiff goes on to

claim he informed her he was innocent and she "would ignore it especially from the Administrative reaction which got me fired, arrested and reinstated on parole." (*Id.*).

Plaintiff identifies Defendant Traci Graham as a prosecuting attorney who "prosecuted me . . . without sufficient evidence she did not prevent unnecessary conviction & sentence and did not challenge the fact that I did not enter nor request to enter nolo contendere plea. Because of this I was convicted and sentenced." (ECF No. 14, p. 16).

Plaintiff also states he was denied "adequate medical, having been subjected to incarceration I have been [scarred], broken, hazed, and disciplined because of my medical conditions. And my foot is still wounded has [healed] out of place, my penis has deformed due to medical negligence, my chest neck back head arm subsequently hurt." (ECF No. 14, p. 18). He also claims he has been subjected to forced labor, racial discrimination among inmates, housed with alleged criminals, and subjected to living conditions which are inhumane. (*Id.*). Plaintiff does not identify any specific Defendants as being responsible for these claims.

Plaintiff also appears to add three new Defendants, Bubba Shewbirt, Catherine Lee, and Magistrate Judge Barry A. Bryant. With respect to Shewbirt and Lee, Plaintiff states, "I am adding the callers of each known incident which is for the arrest in 2009 as one, Bubba Shewbirt. And the arrest in 2012 as one Catherine E. Lee. . . . Shewbirt failed to prosecute his claims . . . did not assure that law was appropriately applied. Having failed to appear and participate." (ECF No. 14, p. 19). Plaintiff goes on to say Catherine Lee also failed to "prosecute her claims diligently and did not assure that law was appropriately applied. She has not attempted to obtain nor maintain contact with me in light of our children and has denied me . . . corresponding rights she ignores me and does not include me in the children's life." (*Id.*).

As for Judge Bryant, Plaintiff seeks to add him as a defendant because he ordered Plaintiff to file a Second Amended Complaint. Plaintiff states that Judge Bryant's "denial or disagreement and/or outcome other than those which are not in my interest and achievement will be considered violate of the due process clause . . . for ignoring legal doctrine in light of my right to counsel and to peacefully assemble." (ECF No. 14, p. 21).

## II. LEGAL STANDARD

Under the PLRA, the Court is obligated to screen the case prior to service of process being issued. The Court must dismiss a complaint, or any portion of it, if it contains claims that: (1) are frivolous, malicious, or fail to state a claim upon which relief may be granted; or, (2) seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is frivolous if "it lacks an arguable basis either in law or fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A claim fails to state a claim upon which relief may be granted if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "In evaluating whether a *pro se* plaintiff has asserted sufficient facts to state a claim, we hold 'a *pro se* complaint, however inartfully pleaded . . . to less stringent standards than formal pleadings drafted by lawyers.'" *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, even a *pro se* plaintiff must allege specific facts sufficient to support a claim. *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

A federal cause of action exists for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. In order to state a claim under section 1983, a plaintiff must allege each defendant acted

under color of state law and that he or she violated a right secured by the constitution. *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir. 1999).

To determine the presence of state action, a court must examine the record to determine whether "the conduct allegedly causing the deprivation of a federal right [is] fairly attributable to the State." *Montano v. Hedgepeth*, 120 F.3d 844, 848 (8th Cir. 1997). There can be no "fair attribution" unless the alleged constitutional violation was "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible." *Lugar*, 457 U.S. at 937. In addition, "the party charged with the deprivation must be a person who may fairly be said to be a state actor. This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State." *Id.*; *see also Roudybush v. Zabel*, 813 F.2d 173, 176-77 (8th Cir. 1987).

## III. DISCUSSION

As previously stated, Plaintiff attempts to assert a host of unrelated claims over a period of eleven years against twenty-one defendants who were involved in various phases of his criminal charges, convictions, and parole. The law is clear that, due to the risk of confusion and unfair prejudice, unrelated claims cannot be included in one lawsuit, as claims against multiple parties must arise out of the same transaction or occurrence. *See* Fed. R. Civ. P. 20(a)(2); *see also Winnett v. Burls*, No. 2:10-cv-0106-DPM/HDY, 2010 WL 4838455, at *2 (E.D. Ark. Oct. 8, 2010), *report and recommendation adopted sub nom. Winnett v. Burl*, No. 2:10-cv-0106-DPM, 2010 WL 4853309 (E.D. Ark. Nov. 22, 2010). Plaintiff also may "not defeat the filing fee requirements set forth in the Prison Litigation Reform Act . . . by joining in one lawsuit a multitude of unrelated and legally distinct claims involving different Defendants and time periods." *Maxwell/G-Doffee*

*v. Allen*, No. 5:09-cv-0142-BSM/HDY, 2009 WL 2924591, at *1 (E.D. Ark. Sept. 9, 2009); *see also Hawkins v. Byrd*, No. 4:08-cv-1791-WRW/BD, 2008 WL 4649072, at *2 (E.D. Ark. Oct. 17, 2008) ("Plaintiff may not use the instant lawsuit to include any and every claim he currently has, has had, or may have during his incarceration.").

These reasons, combined with the fact that Plaintiff has repeatedly failed to comply with court orders directing him to limit his pleading to twenty pages and to provide the Court with the current address and employment of each Defendant, give the Court adequate cause to dismiss Plaintiff's claims without prejudice. *See Brown v. Frey*, 806 F.2d 801, 803-04 (8th Cir. 1986) (stating a district court has the power to dismiss an action based on "the plaintiff's failure to comply with any court order"). Indeed, as discussed below, the Court will dismiss some of Plaintiff's claims without prejudice on that basis. However, the Court will not dismiss all of Plaintiff's claims without prejudice because some of the claims can be dismissed with prejudice for being clearly frivolous, as they are asserted against individuals who are immune from suit or who were not acting under color of state law. The Court will now separately address Plaintiff's claims.

### A. Defendants Hurst, Morritz, Tyler, and Rogers

Defendants Hurst, Morritz, Tyler and Rogers are defense attorneys who represented Plaintiff during his criminal proceedings. Defendants Hurst and Morritz were privately retained attorneys. Defendants Tyler and Rogers were public defenders. None of these Defendants are subject to suit under section 1983.

A section 1983 complaint must allege that each defendant, acting under color of state law, deprived the plaintiff of "rights, privileges or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983; *see also DuBose v. Kelly*, 187 F.3d 999, 1002 (8th Cir. 1999). "[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in criminal proceedings." *Polk Cnty. v. Dodson*, 454 U.S. 312,

324 (1981). While performing his duties, a public defender retains all the essential attributes of a private attorney, including, most importantly, his "professional independence," which the State is constitutionally obliged to respect. *Id.* at 321-22. Thus, when representing an indigent defendant in a state criminal proceeding, a public defender does not act under color of state law for purposes of section 1983 because he is "not acting on behalf of the State; he is the State's adversary." *Id.* at 323 n.13. Similarly, a private attorney, even when appointed by a court, does not act under color of state law for purposes of section 1983 liability. *Bilal v. Kaplan*, 904 F.2d 14, 15 (8th Cir. 1990).

Plaintiff has not alleged that Defendants Tyler or Rogers acted outside a lawyer's traditional functions as public defenders. Thus, taking Plaintiffs' allegations as true, Defendants Tyler and Rogers were not acting under color of state law while representing him. Accordingly, Plaintiff has failed to state a cognizable section 1983 claim against them. Similarly, Defendants Hurst and Morritz's purely private actions afford no basis for section 1983 liability. Accordingly, Plaintiff has failed to state cognizable claims under section 1983 against Defendants Hurst and Morritz.

Plaintiff's claims against Defendants Hurst, Morritz, Tyler, and Rogers all fail because those defendants did not act under color of state law. Accordingly, those claims should be dismissed with prejudice.

### B. Judges Culpepper, Wright, and Bryant

Defendants Culpepper and Wright are the state court judges who presided over Plaintiff's criminal proceedings. Judge Bryant is the Magistrate Judge assigned to the instant lawsuit. As discussed below, these judges are all immune from suit under section 1983.

Absolute judicial immunity protects a judicial officer from civil suits seeking money damages. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991); *Callahan v. Rendlen*, 806 F.2d 795, 796 (8th Cir. 1986). "Judicial immunity is an immunity from suit, not just from ultimate assessment

of damages." *Mireles*, 502 U.S. at 11. The "long-settled" rationale behind this doctrine is to uphold the independence and impartiality of judges by ensuring that potential exposure to liability will not cloud their judgments. *See Antoine v. Byers & Anderson, Inc.*, 508 U.S. 429, 435 (1993).

"Judges performing judicial functions enjoy absolute immunity from [section] 1983 liability." *Robinson v. Freeze*, 15 F.3d 107, 108 (8th Cir. 1994). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). Judicial immunity is overcome in only two situations: (1) if the challenged act is non-judicial; or (2) if the action, although judicial in nature, was taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11. Whether an act performed by a judge is "judicial" is determined by: (1) the nature of the act itself, i.e., whether it is a function normally performed by a judge; and (2) the expectation of the plaintiff, i.e., whether he dealt with the judge in his or her judicial capacity. *Stump*, 435 U.S. at 362.

Plaintiff has failed to allege that any action taken by Defendants Culpepper, Wright, or Bryant was non-judicial or taken without jurisdiction. Rather, Plaintiff's allegations regarding Defendants Culpepper, Wright, and Bryant relate to actions they took in their capacities as judges presiding over cases. "Regardless of whether the decisions made by the judges were right or wrong, legal or unlawful, they were made with proper jurisdiction and in the performance of the judges' judicial duties." *Kraklio v. Conard*, No. 3:09-CV-158, 2010 WL 11614161, at *3 (S.D. Iowa Apr. 20, 2010). Accordingly, Defendants Culpepper, Wright, and Bryant are immune from suit and all claims against them should be dismissed with prejudice.

### C. Prosecutors Harris, Harper, Ford, and Graham

Defendants Harris, Harper, Ford, and Graham were state prosecutors who prosecuted criminal cases against Plaintiff. As discussed below, they are immune from suit.

A prosecutor enjoys absolute immunity from suit under section 1983 for any conduct undertaken in his or her role as advocate for the state. *Imbler v. Pachtman*, 424 U.S. 409, 427-28 (1976). Absolute prosecutorial immunity protects the prosecutor as a key participant in the criminal justice process, such that the prosecutor need not be inhibited from performing his or her functions by a constant fear of retaliation. *Id*. at 428. This is true no matter the underlying motive of the prosecutor or the propriety of the actions taken. *See Schenk v. Chavis*, 461 F.3d 1043, 1046 (8th Cir. 2006) ("Actions connected with initiation of prosecution, even if those actions are patently improper, are immunized.").

Plaintiff has failed to allege that Defendants Harris, Harper, Ford, or Graham engaged in any conduct outside of their advocacy duties as prosecutors. Rather, he alleges that they prosecuted him without sufficient evidence, resulting in his conviction. Prosecutors enjoy absolute immunity from suit regarding their decision to initiate prosecution and in presenting the State's case. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). Accordingly, Defendants Harris, Harper, Ford, and Graham are immune to suit and all claims against them should be dismissed with prejudice.[5]

### D. Parole Officers Evans and Simmons

Defendants Evans and Simmons were Plaintiff's parole officers. Plaintiff alleges that Defendant Evans observed him being handcuffed to a fence by police and that she allowed him to be prosecuted on charges. Plaintiff alleges that Defendant Simmons incorrectly informed him of parole appointment times, which caused warrants to be issued for his arrest when he missed the

---

[5] Plaintiff did not specifically allege any facts regarding Defendant Harper in the Second Amended Complaint, which is a separate, independent basis to dismiss the claims against her. *See Clemmons v. Armontrout*, 477 F.3d 962, 967 (8th Cir. 2007) ("To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights.").

appointments. He also alleges that Defendant Simmons failed to prevent false arrests and prosecutions that were initiated against him.

Although *pro se* pleadings are to be construed liberally, a *pro se* litigant is not excused from complying with substantive and procedural law. *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984). The Local Rules state in pertinent part:

> It is the duty of any party not represented by counsel to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently . . . If any communication from the Court to a *pro se* plaintiff is not responded to within thirty (30) days, the case may be dismissed without prejudice. Any party proceeding *pro se* shall be expected to be familiar with and follow the Federal Rules of Civil Procedure.

Local Rule 5.5(c)(2).

Additionally, the Federal Rules of Civil Procedure specifically contemplate dismissal of a case on the grounds that the plaintiff failed to prosecute or failed to comply with orders of the court. Fed. R. Civ. P. 41(b); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962) (stating the district court possesses the power to dismiss *sua sponte* under Rule 41(b)). Pursuant to Rule 41(b), a district court has the power to dismiss an action based on "the plaintiff's failure to comply with *any* court order." *Brown v. Frey*, 806 F.2d 801, 803-04 (8th Cir. 1986) (emphasis added).

The Court directed Plaintiff to provide every Defendant's name, position, and relationship to Plaintiff, place of employment and address. (ECF No. 13). Plaintiff has failed to provide all required information for Defendants Evans and Simmons. Thus, Plaintiff has failed to obey a court order. Therefore, pursuant to Federal Rule of Civil Procedure 41(b) and Local Rule 5.5(c)(2), the Court finds that Plaintiff's excessive force claims against Defendants Evans and Simmons should be dismissed without prejudice.

### E. Shewbirt and Lee

Plaintiff seeks to add Bubba Shewbirt and Catherine Lee as Defendants because he claims they violated his civil rights when they made calls to the police and then provided information that he believes resulted in his convictions.  Plaintiff also claims they failed to "diligently prosecute their claims," although the meaning of this statement is unclear to the Court.

To the extent that Plaintiffs seeks leave to amend his complaint to add Shewbirt and Lee as defendants, the Court would deny leave to amend.  Leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15.  However, denial of leave to amend has been upheld when a plaintiff seeks to add claims unrelated to the claims previously raised in the suit.  *See Wishon v. Gammon*, 978 F.2d 446, 448 (8th Cir. 1992).  Plaintiff wishes to assert claim against Shewbirt and Lee for alleged acts taking place in 2009 and 2012 that appear to be unrelated to the current claims in this case.  Thus, leave to amend will be denied.

If the Court assumes *arguendo* that Shewbirt and Lee are already Defendants in this case, Plaintiff's claims against them fail.  The facts set forth in Plaintiff's Second Amended Complaint do not support any plausible cause of action for relief under 42 U.S.C. § 1983 against Shewbirt or Lee because Plaintiff has alleged no facts showing they were acting under color of state law when they contacted the police and provided information to them.  Instead, Plaintiff's allegations show that Shewbirt and Lee were acting in their capacity as private citizens.  Accordingly, the Court finds that Shewbirt and Lee are not state actors.[6]  The claims against these Defendants should be dismissed without prejudice.

---

[6] Although Plaintiff's allegations are unclear, if either Shewbirt or Lee testified during Plaintiff's criminal proceedings, they would be immune from suit under section 1983.  *See Rehberg v. Paulk*, 566 U.S. 356, 363 (2012) (stating that witnesses enjoy absolute immunity from section 1983 suits based on statements made in the course of a judicial proceeding).

**F. Unlawful Arrests – Defendants McBrayer, Singleton, Clark, Morris, Brown, and Hughes**

Plaintiff alleges Defendants McBrayer, Singleton, Clark, Morris, Brown, and Hughes unlawfully arrested him in 2009, 2012, 2014, 2015, and 2018. As discussed below, Plaintiff is barred from recovering on these claims.

To bring a claim for relief for an illegal arrest, Plaintiff must first show that "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of *habeas corpus*." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Plaintiff may not use the civil rights statutes as a substitute for *habeas corpus* relief. In other words, he cannot seek relief pursuant to section 1983 that would undermine or potentially invalidate his criminal charges, convictions, and subsequent confinement. *See, e.g.*, *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973) (stating *habeas corpus* is the sole federal remedy for prisoners attacking the validity of their conviction or confinement).

Plaintiff has not provided any evidence that his convictions have been invalidated by the highest state court or in federal *habeas* proceeding. Instead, Plaintiff states he is currently pursuing *habeas* relief in both the Eastern and Western District of Arkansas. (ECF No. 14, p. 8). Thus, Plaintiff's claims for unlawful arrest are *Heck*-barred because a judgment in favor of Plaintiff and against Defendants McBrayer, Singleton, Clark, Morris, Brown, and Hughes on unlawful arrest claims would necessarily imply the invalidity of Plaintiff's conviction or sentence. *Roe v. Graham*, No. 2:09-CV-98-DPM, 2010 WL 4916328, at *1 (E.D. Ark. Nov. 23, 2010). Accordingly, the claims for unlawful arrest against Defendants McBrayer, Singleton, Clark, Morris, Brown, and Hughes should be dismissed without prejudice. *See Schafer v. Moore*, 46 F.3d 43, 45 (8th Cir. 1995) (providing that a dismissal pursuant to *Heck* should be without prejudice).

### G. Excessive Force – Defendants McBrayer, Clark, Singleton, Morris, Brown, Hughes

Plaintiff claims Defendant Singleton used excessive force against him in 2012 when he directed his officers to tase him. (ECF No. 14, p. 11). Plaintiff also claims Defendants McBrayer, Clark, and Singleton used excessive force against him in 2014 and again in 2015. (*Id.* at p. 10). In addition, Plaintiff claims that Defendants Morris, Brown, and Hughes used excessive force against him when they grabbed him and handcuffed him to a fence during an arrest in 2018. (*Id.* at pp. 13-15).

As previously stated, the Court ordered Plaintiff to provide on consecutive pages every Defendant's name, position, relationship to Plaintiff, place of employment and address. Plaintiff failed to provide this required information for Defendants McBrayer, Clark, Singleton, Morris, Brown and Hughes. (ECF No. 14). Thus, he has failed to obey a court order. Accordingly, the Court finds that the excessive force claims against Defendants McBrayer, Clark, Singleton, Morris, Brown, and Hughes shall be dismissed without prejudice pursuant to Rule 41(b). *See Brown*, 806 F.2d at 803-04 (authorizing Rule 41(b) dismissal based on "the plaintiff's failure to comply with any court order").

Moreover, claims against multiple defendants must arise out of the same transaction or occurrence. *See* Fed. R. Civ. P. 20(a)(2). Unrelated claims are not to be included in one lawsuit due to the risk of confusion and unfair prejudice. *Winnett*, 2010 WL 4838455, at *2. Plaintiff's unrelated allegations of excessive force involve different Defendants and time periods. Plaintiff may "not defeat the filing fee requirements set forth in the Prison Litigation Reform Act . . . by joining in one lawsuit a multitude of unrelated and legally distinct claims involving different Defendants and time periods." *Maxwell/G-Doffee*, 2009 WL 2924591, at *1. This presents an

additional reason why Plaintiff's allegations of excessive force against Defendants McBrayer, Clark, Singleton, Morris, Brown and Hughes should be dismissed without prejudice.[7]

### H. Denial of Medical Care, Forced Labor, Discrimination, Conditions of Confinement

Plaintiff makes general allegations that he was denied medical care, subjected to forced labor, suffered racial discrimination among inmates, housed with alleged criminals, and lived in conditions which were inhumane while he was incarcerated. However, he does not identify the individuals involved or the locations where he was incarcerated when these alleged violations of his civil rights occurred. Thus, Plaintiff does not allege enough facts to state a claim to relief that is plausible on its face because "[l]iability under section 1983 requires a causal link to, and direct responsibility for, the deprivation of rights. To establish personal liability on the part of a defendant, [the plaintiff] must allege specific facts of personal involvement in, or direct responsibility for, a deprivation of [his] constitutional rights." *Clemmons*, 477 F.3d at 967.

Plaintiff has been given three opportunities to amend his complaint to clarify his claims, but he has failed to do so. Accordingly, Plaintiff has failed to state cognizable claims for denial of medical care, forced labor, discrimination, and unlawful conditions of confinement. Accordingly, those claims should be dismissed without prejudice.

### I. Child Custody

Plaintiff asks the Court to award him "custody/visitation" with his children he has with Catherine Lee. He states she will not speak or respond to him. For the following reasons, the Court declines to hear this claim.

---

[7] Without deciding, the Court notes that Plaintiff's excessive force claims for acts allegedly occurring in 2009, 2012, 2014, and 2015 are likely time barred by the applicable three-year statute of limitations. *See Miller v. Norris*, 247 F.3d 736, 739 (8th Cir. 2001) (stating Arkansas' three-year personal injury statute of limitations, codified at Ark. Code Ann. § 16 56 105(3), is applicable to section 1983 cases).

Plaintiff may not seek redress in federal court for issues related to custody of his children. Federal courts do not have jurisdiction over any "action for which the subject is . . . child custody." *Kahn v. Kahn*, 21 F.3d 859, 861 (8th Cir. 1994). When a cause of action closely relates to but does not precisely fit into the contours of an action for divorce, alimony, or child custody, federal courts generally will abstain from exercising jurisdiction. *See Lannan v. Maul*, 979 F.2d 627, 631 (8th Cir. 1992). Plaintiff's claim seeks child custody and, thus, falls within the realm of family law which the Court cannot hear. Thus, the Court either lacks jurisdiction to hear Plaintiff's child custody or visitation claim or, alternatively, the Court will abstain from hearing the child-custody claim. Either way, the claim should be dismissed without prejudice. *Farmer v. Duncan*, No. 5:17-cv-5171-PKH, 2018 WL 295800, at *3 (W.D. Ark. Jan. 4, 2018).

## IV. CONCLUSION

For the above-stated reasons, the Court finds as follows:

1) Plaintiff's claims against Justin Hurst, Billy Morritz, Joe T. Tyler, and Danny Rogers are **DISMISSED WITH PREJUDICE**;

2) Plaintiff's claims against Judge Duncan Culpepper, Judge Randal Wright, and Magistrate Judge Barry A. Bryant are **DISMISSED WITH PREJUDICE**;

3) Plaintiff's claims against Phillip Harris, Kolby Harper, Matthew Ford, and Traci Graham are **DISMISSED WITH PREJUDICE**;

4) Plaintiff's claims against Officer Evans and Deputy Simmons are **DISMISSED WITHOUT PREJUDICE**;

5) Plaintiff's claims against Bubba Shewbirt and Catherine E. Lee are **DISMISSED WITHOUT PREJUDICE**;

6) Plaintiff's claims for unlawful arrest against Tim McBrayer, James Singleton, Sean Clark, Bo Morris, Officer Brown, and Sergeant Hughes are **DISMISSED WITHOUT PREJUDICE**;

7) Plaintiff's claims for excessive force against Tim McBrayer, James Singleton, Sean Clark, Bo Morris, Officer Brown, and Sergeant Hughes are **DISMISSED WITHOUT PREJUDICE**;

8) Plaintiff's claims for denial of medical care, forced labor, discrimination and conditions of confinement are **DISMISSED WITHOUT PREJUDICE**; and

9) Plaintiff's claim for custody/visitation of his children is **DISMISSED WITHOUT PREJUDICE**.

All of Plaintiff's claims have been dismissed and, therefore, the Clerk of Court is **DIRECTED** to terminate this case.

**IT IS SO ORDERED**, this 16th day of October, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge